UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK HALL,

    Plaintiff,                                      Civil Action No. 08-CV-13183

v.                                                    HON. BERNARD A. FRIEDMAN

NAOMI GLADNEY, et al.,

    Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE BINDER'S REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

This matter is before the Court on Defendants' motion for summary judgment. On May 15, 2009, Magistrate Judge Binder issued a Report and Recommendation ("R and R") recommending that the motion for summary judgment with respect to Defendant Gladney be granted, and the motion for summary judgment with respect to Defendant Vadlamudi be denied. Defendant Vadlamudi filed an objection to the R and R.

**II.    Facts**

Plaintiff Derrick Hall is a state prisoner currently incarcerated at the Saginaw Regional Correctional Facility in Freeland, Michigan. Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that fifteen employees of the Michigan Department of Corrections violated his Eighth Amendment right to have serious medical needs met without deliberate indifference.

Plaintiff's claims stem from an incident that occurred in December, 2007 when he was

incarcerated at the Mound Correctional Facility in Detroit, Michigan.  Plaintiff claims that he suffered from delays in medical care that greatly increased the amount suffering he had to endure.

Following an initial screening by Magistrate Judge Binder, his recommendation that all Defendants be dismissed sua sponte except Defendants Vadlamudi and Gladney was adopted. On January 16, 2009, Defendants Vadlamudi and Gladney filed the present motion for summary judgment.

The Court has reviewed this matter de novo, as required under Fed. R. Civ. P. 72(b) and has reviewed the factual and procedural history, as laid out in Magistrate Judge Binder's R and R.  Finding it accurate, the Court adopts the factual and procedural history for purposes of this Order.  However, the Court wishes to specifically highlight the following facts:

    A.    **Nurse Smith Gladney ("Nurse Gladney")**

On December 1, 2007 Plaintiff sought medical care after dropping a box of frozen food on his hand.  (Ex. C at 205).  At this initial consultation, Plaintiff was instructed by Nurse Smith to ice his hand twice a day, and he was excused from work for two days.  *Id*.

Nurse Gladney saw Plaintiff when he returned to the clinic on December 3, 2008.  (Aff. Def. Smith Gladney ¶ 4).  Nurse Gladney placed an order to take an x-ray of Plaintiff's right hand the following day.  *Id*.  On December 4, 2007, after the x-ray was taken, Nurse Gladney sent Plaintiff to Detroit Receiving Hospital.  (Ex. C at 202).  Nurse Gladney attests that she did not further evaluate or treat Plaintiff regarding his hand condition. (Aff. Def. Smith Gladney ¶ 7).

    B.    **Dr. Vadlamudi**

On December 14, 2007, December 18, 2007, January 2, 2008, and January 5, 2008, Plaintiff made repeated requests to the Mound Correctional Facility clinic for an appointment to obtain medical care for his hand injury. (Ex. C at 191, 189, 186, 185).  On January 7, 2008, Doctor Vadlamudi examined Plaintiff.  *Id*. at 183.  Dr. Vadlamudi documented that prior to this date, Plaintiff had refused to be seen, he took out his own splint, and that Plaintiff "now wants to be seen by [specialist] willing to go now." *Id*.  Dr. Vadlamudi entered a request that Plaintiff be evaluated by the orthopedic clinic within 3 days.  *Id*.

On January 15, 2008 Dr. Ikram, an orthopedic specialist, evaluated Plaintiff.  *Id*. at 180.  Dr. Ikram noted that "some very minimal tenderness . . . [and] full range of motion of the fingers." *Id*. at 178.  Dr. Ikram's report indicated that the x-ray showed a "malunion of the right fourth metacarpal fracture with healing." *Id*.  Dr. Ikram documented that Plaintiff could "return back to light duty with his right hand . . . with limitation of lifting" because Plaintiff was experiencing "minimal discomfort." *Id*.  Furthermore, Dr. Ikram noted that Plaintiff "desires surgical intervention for anatomical correction of the fracture." *Id*. at 179.

There is no evidence to indicate that the hand surgeon saw Plaintiff, although he received the authorization to do so on January 24, 2008.  *Id*. at 168.

In May 2008, another orthopedic doctor evaluated Plaintiff and found that the fracture in the fourth metacarpal had healed, there were no rotation deformities and that the hand needed strengthening.  *Id*. at 142.

In September 2008, Plaintiff initiated a re-evaluation of "the orthopedic surgeon's decision in May 2008." *Id*. at 60.  On October 3, 2008 an x-ray was taken of Plaintiff's hand and the radiology report stated that "the fracture noted on the previous study involving the fourth metacarpal bone is completely healed.  No evidence of an acute displaced fracture or other acture

osseous abnormalities [is] noted as viewed." *Id*. at 32.  The doctor denied Plaintiff's request for a referral to see a hand surgeon (*id*. at 31), but he did order another x-ray to determine if there was more than a 20-degree of angulation. *Id*. at 28.  The doctor noted that if the angulation was greater than 20 degrees he would consider referring Plaintiff to a hand surgeon.  *Id*. at 28.

On October 31, 2008, the follow-up x-ray was performed and then compared to the x-ray from October 3, 2008.  The radiologist found "no acute dislocation." *Id*. at 21.  A medical report from early December 2008 indicated that more information was necessary to consider if Plaintiff should be sent to a hand surgeon. *Id*. at 13.  Therefore, Plaintiff's x-ray from October 31, 2008 was re-read to determine if the angulation was greater than 20 degrees.

The report from the re-examination of the October 31, 2008 x-ray indicates that the fourth metacarpal was not impaired, but there was "apex lateral angulation" of approximately 35 degrees at the *fifth metacarpal* and proximal phalangeal joint. *Id*. at 11.

On December 9, 2008 Plaintiff visited the clinic regarding numbness in his fourth and fifth fingers.  However, at the time of the evaluation there was no numbness. The nurse found that his grip was "strong and equal," and "no abnormal findings" were documented. *Id*. at 10

### III.   Analysis

#### A.   Motion for Summary Judgment

A court may grant a motion for summary judgment pursuant to FED. R. CIV. P. 56 if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the burden of proof on a motion for summary judgment, but is only required to point out "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). *See*

*Moore v. Philip Morris Co.*, 8 F.3d 335 (6th Cir. 1993). The evidence must be weighed in the light most favorable to the non-moving party determine whether a motion for summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *Facts must be viewed in the light most favorable to the non-moving party. See Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 412 (6th Cir. 1999). If the Plaintiff comes forward with evidence to rebut the motion for summary judgment from which "reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

  **B.** **Eighth Amendment Claims**

The Eighth Amendment prohibits inflicting "cruel and unusual punishment." U.S. CONST. amend VIII. The Supreme Court has interpreted this phrase to forbid "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." (Citing *Gregg*, 428 U.S. 153, 173).

There are two requirements for finding a prison official liable for violating the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). *See also Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (finding that deliberate indifference has both an objective and a subjective component). First, the alleged deprivation must be, objectively, "sufficiently serious," and second, a prison official must have acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

In order to meet the objective component, Plaintiff must offer evidence to show that the alleged deprivation of medical care had a detrimental effect. *Napier v. Madison County*, 238

F.3d 739, 743 (6th Cir. 2001) (finding that summary judgment was proper when Plaintiff offered no medical evidence to show that he suffered a detrimental effect). This may be accomplished by showing that the medical need was obvious or that the delay in treatment had a detrimental effect. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). *See also Gaudreault v. Salem*, 923 F.2d 203, 208-09 (6th Cir. 1990) (finding that the inmate did not provide sufficient evidence to establish that the delay in medical treatment caused him further harm).

### 1. Defendant Gladney

Plaintiff alleges that Defendant Nurse Gladney refused to provide medical care on December 3, 2007 (Compl. ¶ 26) and that, on January 3, 2008, she "refused to comply with her job responsibilities and refused to treat the Petitioner for his injuries." (Id. ¶ 9).

The record indicates that Nurse Gladney provided medical care on December 3, 2007, requested that Plaintiff have x-rays taken of his injured hand on December 4, 2007 and sent Plaintiff to the hospital thereafter. (Aff. Def. Smith Gladney ¶ 4; Ex. C at 202). Plaintiff does not refute these assertions. Therefore, Nurse Gladney did not refuse to treat Plaintiff for his injuries, and summary judgment is granted in favor of Defendant Gladney.

### 2. Defendant Vadlamudi

Plaintiff alleges that Defendant Dr. Vadlamudi ignored the instructions from Detroit Receiving Hospital that he needed to be seen within five days by the orthopedic clinic thereby adding to his pain and the need for hand surgery. Plaintiff states that this "could have been avoided if Dr. Seetha R. Vadlamudi and staff acted with the proper Medical treatment that any prisoner should be entitled to." (Compl. at 3).

Plaintiff fails to show that the deprivation of medical care was sufficiently serious to rise to the level of an Eighth Amendment violation. Plaintiff does not offer evidence that the alleged deprivation had a detrimental effect. *See Napier*, 238 F.3d at 743.

In May 2008, an orthopedic specialist found that Plaintiff's fracture had healed without rotational deformities. (Ex. C. at 142). In September 2008, Plaintiff initiated a re-evaluation of his hand in order to see a hand specialist. Plaintiff was never given approval to see a hand specialist after the re-evaluation commenced. On December 9, 2008, the most recent documented medical examination of Plaintiff's hand, there was no numbness, Plaintiff's grip was "strong and equal" and there were no abnormal findings documented. *Id*. at 10. Plaintiff fails to provide evidence that Defendant's Vadlamudi's treatment had a detrimental effect upon Plaintiff. Defendant Vadlamudi's motion for summary judgment is granted.

## IV.   Order

For the foregoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment is GRANTED.


Dated: July 14, 2009____                              s/Bernard A. Friedman_____
       Detroit, Michigan                              BERNARD A. FRIEDMAN
                                                      UNITED STATES DISTRICT JUDGE